No. 18,819.

THE STATE OF KANSAS, ex rel. RAY H. BEALS, as County Attorney, etc., *Appellee*, v. THE CITY OF STAFFORD et al., *Appellants*.

### SYLLABUS BY THE COURT.

INJUNCTION—*Purchase of Light Plant by City—Can Not Purchase Unexpired Franchise — Evidence — Finding.* On this appeal it is held that there is sufficient testimony to support a finding of the trial court that a part of the amount named as the consideration of a contract for the purchase by a city of a light plant, or a part of the same, which had been owned and operated by a private owner, was paid by the city to such owner for the surrender of an unexpired part of an exclusive franchise previously granted to the owner by the city.

Appeal from Stafford district court; DANIEL A. BANTA, judge. Opinion filed May 9, 1914. Affirmed.

C. M. Williams, of Hutchinson, for the appellants.
A. C. Malloy, of Hutchison, for the appellee.

The opinion of the court was delivered by

JOHNSTON, C. J.: This action was brought by the state on the relation of the county attorney to enjoin the city of Stafford and its officers from purchasing the light plant or the material composing the plant of the Larabee Light and Power Company, and also from using the funds derived from bonds authorized by a vote of the electors of the city and issued for the purpose of constructing an electric light plant and to require the officers to restore to the special light fund the money wrongfully taken therefrom. It appears that the Larabee Light and Power Company, which was made a defendant, had been furnishing light to the city and its inhabitants under what is termed an exclusive franchise, running twenty years, and that only fourteen years of the franchise period had expired. The city, desiring to own and operate a plant of its own, voted the bonds mentioned in the amount of $25,-000, the proceeds of which were to be kept as a separate and special fund to be devoted solely to the construction of an electric light plant. The Larabee Light and Power Company offered to sell its lighting plant, except the machinery for generating power, and to assign its light franchise to the city for $14,000, which offer was accepted by the city and the purchase accordingly made, as appears from the written bill of sale, although it contained a recital to the effect that the money was paid for the machinery and material purchased. About the same time the city purchased additional material from the Larabee Light and Power Company, the exact character of which is not shown, and paid $2554.27 for it, but this payment was not made from the special fund. Some of the citizens opposed the purchase, and injunction proceedings were begun in which it was alleged that the sale was corruptly made, that the plant and fixtures were sold for $11,800 and the franchise and good will were sold for

The State, *ex rel.*, v. City of Stafford.

$2200, that the property purchased was worn and almost worthless, and, besides, that the officers had no authority to use the proceeds of the bonds to make the purchase, and the appellee therefore asked for the annulment of the contract and the restoration of the money. The court found that $14,000 was paid over by the city to the company out of the light fund, and that $11,800 was paid for the plant or the material in it, and that the balance, $2200, was paid for the surrender of the unexpired franchise held by the company and for its good will. The court acquitted the city officers of fraud and refused to set aside the entire contract of purchase because of the loss which would result from such action, the city having connected the purchased property with its own plant, having made other contracts and new extensions; and on account of the effect of a complete rescission the court concluded to approve the purchase of the material and fixtures at $11,800, which it expressly found was the full value of the property purchased. It did set aside that part of the contract which provided for the purchase of the unexpired franchise and good will at $2200, and ordered the restoration of that amount to the special light fund.

In this appeal there is no contention that the city officers had any power or authority to use the funds of the city to pay for the surrender of the unexpired franchise of the company, but it is contended that the purchase made did not include the franchise and that there is no testimony tending to show that any part of the $14,000 consideration was paid for the franchise and good will of the company, and therefore no justification for adjudging the restoration of $2200 of the amount paid. That the purchase by the city included the surrender of the franchise is practically admitted in the answer filed by the city officers and by the Larabee Light and Power Company. They alleged that "by reason of the purchase of said material

from the said The Larabee Light and Power Company, the Larabee Light and Power Company surrendered its franchise to furnish electric light to the city of Stafford and its inhabitants, thus enabling the said city of Stafford to construct and operate the said electric light plant."

In the resolution adopted by the mayor and council authorizing the contract that was made it is recited, in effect, that the city had voted bonds to be used in constructing and operating a light plant; that a private party was operating a light plant in the city; that it was not expedient to operate two light plants in the city, and that as the owners of the private plant "are willing to sell to said city a part of the material that they now have on hand and to assign their Franchise to the said City of Stafford, and to discontinue the said business of furnishing light to the Citizens of Stafford, and Whereas the said parties who have the said light material and machinery have made a proposition that they will sell the said material which they have itemized and priced the same, which said material they offer to the said City for the price or sum of Fourteen Thousand Dollars, ($14,000.00)."

It was therefore resolved that the proposition of the company be accepted and that the amount stated be paid for the material obtained by the city from the company. H. F. Tolls, the mayor of the city, testifying about the transaction, said that he understood that the company surrendered its franchise to the city. Several members of the council testified that the city desired to be rid of the franchise in order to avoid competition in furnishing light for the city and its inhabitants, and it was their understanding that the transaction involved the surrender of the franchise to the city. There is abundant testimony, we think, to show that one of the considerations which entered into the contract of purchase and sale between the city and the company was the surrender of the unexpired portion of the franchise.

Is there testimony to support the finding that the real purchase price of the material and machinery purchased was $11,800, and that $2200 of the consideration named in the contract was paid for the unexpired franchise and good will of the company? It has been seen that the offer of the company, which was accepted by the city, included the sale and surrender of the franchise right, and we think there is testimony tending to show that a definite portion of the consideration paid was the agreed value of the surrendered franchise. Prior to the bond election the city employed expert engineers to make a physical examination of that part of the light plant which the company proposed to sell to the city, and they placed a valuation on the same. This was done to the apparent satisfaction of all parties, and the experts valued the property, according to appellants' statement, at $11,800. After this appraisal, and on the day before the election, the mayor issued a notice to the voters of the city, in order, as he says, that they might vote more intelligently on the proposition, and this notice was posted and circulated throughout the city. It contained statements to the effect that an agreement of purchase of the electric light plant had been made, the price being the total sum of $14,000, and after stating the terms on which the bonds had been sold and the proposed expenditure of the proceeds of the bonds, the mayor proceeded:

"Now in regard to the physical value of the electric light plant, which has been disputed by parties unskilled in such material, we simply state that we have had that invoiced by experts in that line at quite an expense to the city in order that no undue advantage be taken, and that all appearance of (it) be apprehended. These experts found the value to be $13,800.00, and figured out a reasonable depreciation to be $2,000.00 which leaves the present physical value to be $11,800.00. The remainder of the $14,000.00 is for the surrender of the 6 year franchise which the present company have on the city and the transfer of all rights

in and to each and every article mentioned in the invoice."

This notice, which was prepared and circulated among the electors, has been treated as an authentic statement by both the city and the company. In their answers filed in this action a reference was made to this statement, very probably for the purpose of meeting the charge of fraud. They allege that the mayor, acting by the direction of the city council, posted over the city in a large number of conspicuous places the notice, which is set out at length, and which contains the admission that $11,800 was the agreed value of the property sold and that $2200 was the price fixed on the unexpired franchise. In addition to this acknowledgment several of the officers testified in regard to the valuation made by the experts, which was used as a basis of negotiations, and that his appraisal, after deducting the expenses of making it, was substantially the same as the amount named in the mayor's notice. There was testimony in regard to the depreciation in the property, an estimate of which was given by the witnesses, and in that connection there is the statement issued by the officers to the effect that in the purchase of the property the depreciation was figured at $2000. As against the claim that the consideration paid may have included additions subsequently made to the plant there is the testimony that the city paid $2554.27 for extra material or things not included in the purchase price in question. While the machinery and material purchased was listed at prices which footed up exactly $14,000, it is plain that the surrender of the franchise was included in the price, and we think there is testimony sufficient to sustain the finding that $2200 of that sum was paid for the surrender of the franchise.

It follows that the judgment of the district court must be affirmed.